Ms. Wolitzer Thank you, Your Honor. Good morning, may it please the Court. I'm Rachel Wolitzer, representing the Appellant of the United States. The District Court abused its discretion in accepting Paxton's $1.9 million first offer to purchase Decedents Paxton Units and in rejecting the Nuttings unconditional $3.2 million cash offer. Counselor, let me ask you a question. I couldn't find it in the briefs. Was there an agreement that burdened the shares, the interest such that there was a right of first refusal? Was that part of an agreement? On the purchase? Within the judicial sale, Your Honor? Yeah, a member owns 15% of the enterprise. Was there an agreement that if the member sold the interest? There was no evidence of any such agreement on the record. Well, then under what theory of law does the Paxton Group get first refusal? Well, the District Court gave them that. Oh, I know that, but I'm looking for a substantive rule that called for that. We were unable to find one either, Your Honor. Well, absent a substantive rule, then you would simply sell it to the highest bidder. Correct. You might put terms to the bidding and say it'll last so long. Correct, Your Honor. Then the bell rings. Correct, Your Honor. Like at an auction of paintings or a soap piece or somebody. Correct, Your Honor. You keep asking for bids and boom, that's the last one. Correct. What you're telling me is there was nothing that gave Paxton a right of first refusal? No, Your Honor. No agreement amongst the members? There was no record evidence of that, and in fact, it appears it would not have been necessary for the District Court to give them that right. I see nothing in the government's brief that even mentions this fact. Well, we took it for granted, Your Honor. Thank you for pointing it out, though, because it would not have been necessary for the District Court to give them that right. Was there at some point in the proceedings that the government told the district judge you can't do that? I would have thought so. As we said in our brief, the judge turned deaf ears on a lot of our requests. I know. If you go back, though, in time, was there anything? Judge, you can't do this. We did object to the marked favoritism shown by this judge. All right. No, no, I'm not talking about the favoritism. I'm talking about giving them the right of first refusal. Correct, Your Honor. That was an example of the favoritism that the judge showed to them. There was no basis for that. Okay. And Paxton didn't present any bylaws or shareholder agreements that said that they had the right of first refusal and that that was the reason that they should be allowed to purchase the shares. Well, assuming that you prevail and is vacated and remanded, what can the District Court do here? Okay. We requested in our brief in the conclusion section a rescission of the sale of the units to Paxton. How would that work? Okay. Well, everything was done on the books, so the rescission would be done on the books, and the shares would be the units would be restored to the receiver. And put them up for sale. Exactly, Your Honor. You can't do damages because damages would be a guesswork. Excuse me? Oh. You couldn't do damages because damages would be guesswork. You have nothing to appraise. So you want the court to do it again and do it right this time? We would like a rescission. The units restored to the receiver, and the receiver be able to market the units as previously. Now, we did argue as an alternative argument on mootness that there is monetary relief available to preclude mootness. Well, there's nothing that would prevent the creation of the units to be sold. Correct. It's all the units were eliminated on the books, they can be restored on the books. I want to go to the first step here, that we just do this the proper way now. And whatever the result was, that's the result. Now, you may get less than – is there any reason you wouldn't get less than $1.9 million? Well, Your Honor, we are taking that risk. We'd like an open, fair bidding process. That's what we requested all along. We would like to have – Especially if you eliminate first refusal. Correct, Your Honor. The whole thing changes. Yes, because in this – It's just an auction. In this case – You have a time limit. First, I suppose you'd have reciprocal offers at one point in time. And you could either take the high one, and that's the end of it. Well, this would be a private sale, like the first one, where the receiver would submit written offers. It would be on the courthouse – On a day certain, and the high bid wins. Well, until either party – Well, unless you're going to reopen it for back and forth. Correct. We would just request an open bidding until one party withdraws. Couldn't the court just deny an open bidding? I mean, the way I read the statute is that the court can pretty much set the terms of the sale itself. It has discretion to do that, right? Correct, Your Honor. However, the case law, including the Tanzer case that we cited in our brief, holds that the procedures set forth in 28 U.S.C. 2001 should be followed except in extraordinary circumstances. It says unless the court orders otherwise. Right. It says unless the court orders otherwise. Yes, Your Honor. The statute that applies to the sale of personal property does state that the 2001 procedures apply – shall apply unless the court orders otherwise, but the case law holds that even though it says there's this exception, in order for the exception not to swallow the rule, the procedures under 2001 should be followed except in extraordinary circumstances, which we argue did not exist here. Why isn't this breakup fee an extraordinary circumstance? If it's not a sincere bid, but just a method of getting a fee in the event there's a higher bid, the court didn't think it was a sincere bid, so it knocked it out. Why isn't that an exceptional circumstance? The court did not make an express finding that the bid was not made in good faith. There was no finding of a lack of good faith. So if we send it back, could the court make that finding in the event that there's a bid, a higher bid with a breakup fee? Well, we would ask again, as we ask below, that there be a hearing held on this. If the court was going to accept a bid that was over a million dollars less than the independent third-party offer, then our argument was the court should have held a hearing. So then there could be a hearing on whether the bid was made in good faith. But I will point out, Your Honor, that the receiver submitted a declaration that this breakup fee was not unusual, that he had participated in numerous media transactions involving a breakup fee in that amount, and the district court found that that receiver was a highly qualified receiver and broker for the sale. So he was good authority. He said it was . . . The Nuttings made the offer with the breakup fee. It seemed to me that that would be helpful to the government if the court rejected it because it would show other bidders who didn't want to pay a breakup fee. Your Honor, it was at the highest bid that the receiver was able to procure within the 90-day period set by the district court. And even if the breakup fee had been paid from the proceeds of the sales, the government would have earned much more to satisfy the taxes than under the very low Paxton offer. But my understanding, though, and tell me if I'm wrong, the court can look at a totality of the circumstances and not make sure that the government gets the highest amount of money that it can get, but it also . . . I mean, Paxton, the Paxton shareholders as well. Doesn't the court have an obligation to look to determine the best interest of the Paxton shareholders as well? The Paxton shareholders' only status in this case was to protect their Subchapter S election. My view is that they had no rights at all. The only rights they had was to save Subchapter S. Correct. It was as if they had Blackacre for sale. Exactly, Your Honor. Blackacre was just a piece of property that they owned. Correct. It's for sale. Right. Their only status . . . Sell it to the highest bidder. Correct. Their only status . . . they did not have any ownership interest in the shares. All right. I'm looking at our precedent. It's old precedent, but it's Citibank versus Data Lease Financial Corporation that cited in the briefs, quote, a sale will not be set aside in the absence of fraud, unfair conduct, or improper conduct of the sale unless the price is so low as to shock the conscious. So in order to vacate and remand, we'd have to find that the sale to the Paxton shocks the conscious? No, Your Honor. Which case are you citing? Citibank versus Data Lease, 645 Fed 2nd, 333. That case we cited actually cited that case in our brief that the judicial sale of the stock may be rescinded and regardless of any subsequent disposition of the stock. Now, we're looking here at private sale. That's what I'm getting at is the statute seems to vest a lot of discretion in the district judge in determining the sale proceeds, right? And so, unless the sale shocks the conscious . . . Again, the Citibank case . . . I'm not familiar with that exact quote, but the Citibank case involves private creditors. So the Rogers rules do not apply. Under Rogers, the court is supposed to ensure that the government receives the highest return possible on the sale of the property in order to maximize recovery of the taxes. It's a completely separate category of foreclosures than private judgment creditor foreclosures. So we would argue that that would make the Citibank language that you quoted inapplicable. You say it's a rebuttal time? Yes. Thank you, Your Honor. Mr. Farley. Good morning. May it please the court, Darren Farfanti on behalf of Paxton Media Group, LLC. Under what substantive rule of law was your client entitled to the last bid, as it were? Your Honor, focusing solely on the statutes at issue here . . . No, no. I want to know under what substantive rule of law, not a procedure. Was there an agreement amongst the members? Your Honor, the shareholder agreement and the amended shareholder agreements were attached to Paxton Media Group, LLC's . . . Did it give Paxton a right of first refusal, as it were? Your Honor, I cannot represent to the court this morning that I know expressly that in that agreement . . . That's at the heart . . . I speak for myself. That's at the heart of the thing. I was shocked when I saw a district judge give Paxton the right of first refusal in effect by the units. Your Honor . . . I was looking for what is the substantive rule for it. The only rule I could imagine is that the members encumbered one another's interests in the units, such that if a member wanted to sell, there were certain restrictions. And, therefore, a buyer at an auction would know, doesn't matter what I bid, because Paxton gets the last word. Understood, Your Honor. You found nothing. That is . . . You're going to tell me where it is. It's at docket number 25. And where is that provision? Well, that provision, I cannot tell you, exists in the agreement. The agreement itself is attached . . . Does it exist anywhere? Well, Your Honor, the provisions that we cite in our briefs deal with the preservation of the S election and the importance that the . . . Well, I know about all that. That's in our . . . I know about all that. The agreement itself and the amended agreements are attached to the . . . Is there anything that gave Paxton a right of first refusal? Your Honor, I believe there is, but I can't represent . . . The answer is yes. I cannot represent it. If it's in the agreement . . . Did you say yes or no? It's in the record. The agreement's in the record, Your Honor. No, no, no. That's not the answer. What gave them the right of first refusal? The right of first . . . That's at the heart of this case. Well, Your Honor, 28 U.S.C. 2004 . . . No, no, not 28 U.S.C. I believe what in the contractual arrangement amongst the members gave Paxton the right of first refusal. If it's there, Your Honor, it's in that shareholder . . . And you can't tell me is what you're telling me. I cannot represent to you that it is, even though I believe it is. I cannot represent to you in the record that it is. Well, then, within 10 days, you'll write the court a letter and specify exactly where in the agreements amongst the parties the right of first refusal exists. I will do that, Your Honor. And the government has 10 days after that to respond. I will do that. Okay. Your Honor, with respect to the standard at issue, the abuse of discretion, the government must establish that there is an . . . If the court made a mistake about first refusal, then it necessarily abused its discretion. I do not agree to that, Your Honor. Well, when the court makes a wrong legal determination, it loses its right to . . . It abuses its discretion as a matter of law. Well, Your Honor, the government would have this court apply 28 U.S.C. 2001, Section 2001, which in the provisions of the statute itself allows for a bidder to come in a private sale and bid, outbid the private sale amount. So in essence, the statutes the government wants to apply include that overbid right, that right of first refusal. So for them to argue . . . Which is a gift that the court gives to one of the parties, one of the bidders. Well, Your Honor, Paxton Media Group was over a barrel from day one here. I don't care about Paxton being over a barrel. What I'm saying, Paxton didn't have any interest except preserving its subject or S status. Yes, which was vital to Paxton Media Group and which was explicit . . . And if the sale had initiated that, had interfered with that, then the court could have set it aside. But assuming, for sake of discussion, that it had nothing to do with it . . . I don't agree it's that limited, Your Honor, because in the Rogers case, the Supreme Court case, the Supreme Court took issue with the government's attempt to sell property and made explicit findings that interests of innocent third parties need to be protected. The interests of Paxton Media Group were taken into account by the District Court in fashioning a sale process. A receiver of the government's own request was appointed. And Paxton Media Group, in June of 2015, had a board meeting, agreed to pay $1.985 million in a private sale. The government didn't want a public sale. In fact, they explicitly told the District Court that they didn't want a public sale because they knew . . . because no one is going to pay for a minority interest in a closely held family corporation in a declining media company. They knew that. They knew that the only recourse they had was to squeeze Paxton Media for as much money as possible . . . by putting forth non-conforming bids, expressions of interest, which were contingent . . . and trying to squeeze Paxton Media to outbid itself . . . which Paxton Media has deposited in the court registry, which is sitting there for the government's benefit. And, they are asking for their cake and they want to eat it too. They want to put Paxton Media over a barrel for what is now 12 months, since last June . . . putting that money into the government's coffers. They abused . . . they abused the court's order. Was there . . . was there a $3.25 million offer that could have been accepted by the court? No, Your Honor, because the expression of interest that the Nuttings put forward . . . and they had 90 days, the receiver had 90 days to solicit that offer. In about 65 days, the receiver sent a letter to the district judge, throwing in the towel, saying this is the best offer we have. It was a contingent offer, full of due diligence provisions, contingencies, including what they're calling a breakup fee. Well, putting aside the breakup fee, but other . . . The $3.25 was . . . there were some contingencies in that offer, as well? The original offer the Nuttings made included a due diligence period, that they could back out at any time. It had all of these provisions in there, which put our selection at risk, because of the identity of the purchaser. And, we objected to that original offer. The issue was the district court's order required us to object within seven days, and also to put our counter bid before the court within that seven day period, the same seven days we had to object. So, without knowing how the district judge would evaluate our objection, we put a protective bid that was contingent on the district judge's . . . $3,750,000. The $3.7, yes. And, we also made objections to the $3.2, Your Honor. And, those objections, the government tried to address by putting forth a revised nutting bid, which still had concerns over the identity of the purchaser, still put our S selection at risk, and maintained this breakup fee. The government sought, with the original offer, the nutting offer, to tack that breakup fee onto the bid, so that Paxton Media was in a position to essentially bid against itself, and also have to take into account this $500,000. Again, they're calling it a breakup fee. It's really an enticement. It was money that they were willing to take from the government coffers, from taxpayers' money, to pay Nutting to come forward and put this expression of interest before the court. Nutting never, in the extended sales period . . . Is that what you're arguing? They were paying Nutting $487,500 to put this offer before the court. What difference would that make if the bottom line would have been $2.7? $2.7 is more than $1.9. If the $3.2 offer was a solid offer, the breakup fee is irrelevant, because you still come up with more money than $1.9. Well, Your Honor, their burden today is to show the district court abused its discretion. They cannot do that. The difference in the money does not take into account that they never submitted a conforming bid. They essentially ignored the district court's order. The district court gave them a sale process, conditionally approved Paxton Media Group's $1.985 million, required Paxton Media to keep that money on its books, knowing that it was bound to fulfill the terms. I will represent to the court. Had we not . . . Wait a minute. . . . had the shares disbursed . . . So what would happen if the government had accepted the Nuttings bid? The government tried to accept it, and the court rejected the letter of intent that Nuttings gave. Had the government accepted the original Nuttings bid, it would have put Paxton Media Group's S election in jeopardy because of the nonconforming nature of the proposed purchaser. It would have . . . And that's something that could have been heard later. Your Honor, that is something that would have potentially terminated the S election, which is potentially irreparable to Paxton Media Group. Once it's terminated, then we're dealing with the IRS on tax issues, on how our S election is terminated. So the idea of having that reviewed later, that's immediate jeopardy to Paxton Media Group. So over the 12 months that this case has been from the original board meeting at Paxton to put the $1.985 million offer in and getting authority, we've had that on the books, our client, and we've deposited that money with the court following the April order directing the trustee to sell the shares. Paxton Media Group extinguished the shares. The shares no longer exist. They went from 262,000 units outstanding to 222,000. The government would like this court to believe that those units are in Treasury stock. That is not accurate. In their briefing, the reference to the units being held in Treasury stock, the units have been extinguished. This is not a case where we're dealing with shares of stock. They're arguing that the district court, by denying the stay, mooted the case. The district court in one fell swoop decided for your client and then ended any appeal. It wasn't one fell swoop, Your Honor. No, no, no. It just ended it because by denying the stay. That's your argument as I hear it. Well, the denial of the stay, Your Honor, happened. Since the status quo ante cannot be restored, then it can't give the government any proof. And if damages were speculative, then the district court, in effect, abolished any chance of appeal to the government. The units are extinguished? Okay. Did the court say anything about a right of first refusal in its order? Your Honor, in the original order in September 2015, Paxton Media had the right within seven days of the presentation of an offer by the receiver, a conforming offer, to present a counter bid. And that is exactly what Paxton Media did and was required to do under the sale. We complied at every turn with a sale order, whereas the government and the receiver ignored it at every turn. The Nuttings bid was not a conforming bid. Correct. It never was. Then why did you respond? Excuse me, Your Honor? Since it was not conforming, why did you respond? We responded, Your Honor, to object to the bid, and then because of the way the order was drafted, giving us the same identical seven-day window to object and to counter bid, we did not want the risk, Your Honor, of having an objection pending without a counter bid and the court denying or striking our objection and then accepting that offer without our counter bid. So we were in a position where we had to put a proposed contingent counter bid into the court, which we did, and it was never triggered because the court found that the nutting offer was nonconforming and was not a qualified bid. So, Your Honor, what's telling from the record is that the court also, in that same order in September, gave the receiver the ability to submit expense reimbursement costs, things of that nature. After the court extended the sale period, once again, after we went through this initial round of nutting offers and gave the government more time to submit a bid, no bid surfaced. The government was unable to have a bid pending. There wasn't even a protective nutting bid before the court when the second or extended sale period ended, and the district court noted that when it ruled that there was not a conforming offer pending, nothing that was basically there to counter the conditionally approved $1.985 million bid from Paxton that has been sitting before the court for several months at that point. And, Your Honor, the cases that look into this issue make clear that the court is to find the best price under the circumstances. The government wants this court to believe that Rogers in Section 7403 of the Internal Revenue Code has courts buying the best, highest recovery for the government in tax cases. That's not correct. What the Supreme Court said is certain and prompt tax collection is paramount. District Judge Scriven made sure that there would be certain and prompt tax collection by escrowing the $1.985 million, requiring the trustee to issue the units to Paxton, Paxton extinguishing them, depositing those funds, which still remain to satisfy the government's tax liability, and which I'm confident the government understands is probably the most money they're ever going to see in this case because the moment they try and hypothetically market a closely held... Did the case be remanded so that the District Judge can address the issue of whether the shares were extinguished and whether or not a new bidding process would likely to generate more funds, etc.? Aren't those all questions that properly belong with the District Judge? Your Honor, the United States has never complied with the District Judge's sale process or sale order, has never submitted a conforming bid, has always run rough shot over the parameters the District Judge set out. At the government's request, their handpicked receiver didn't even submit a fee reimbursement. That shows you how little work the receiver actually did. It shows you how fruitless the idea of trying to market a closely held family company minority interest is because the receiver, one, put in an early offer from the Nuttings, which was nonconforming. One question before time expires. I saw the tax court valued these shares at $35 million. We're talking about a couple million dollars here. What's the problem? Your Honor, this is a media company, and the record is clear. Affidavits from David Paxton about the history of Paxton Media Group, a declining media market. This is a newspaper company, and the government is even aware of the declining nature of the value. They don't dispute that the media company and the media industry has gone down. There's no dispute over that. It's a decline attributable to the type of business Paxton Media Group is in. We understand your case. Your time's up. Thank you. Thank you, Your Honor. Mr. Bullitzer. Thank you, Your Honor. I would like to quote Rogers just to clear up exactly what Rogers says. In Rogers, the Supreme Court stated that Section 7403, quote, gives the federal government the opportunity to seek the highest return possible on the forced sale of property interest liable for the payment of federal taxes. The district court clearly abused its discretion in not allowing the government the opportunity to do that in this case. Isn't there also a requirement that the court consider certain and prompt tax collection as well? Correct, Your Honor, but . . . Rogers says that too, right? Yes. You're just quoting part of Rogers. Correct, Your Honor, but we're the government. We're collecting the taxes, and the state's been going on for . . . These taxes have been delinquent for years, decades, and we don't feel that . . . we feel it's appropriate to wait an extra few months or however long it takes to market and maximize . . . But isn't that what the district judge is charged with asking, with doing? Comparing a certain collection of 1.9 with some speculation as to whether 3.25 is ever going to materialize. Isn't that what the judge is there to do? Well, the 3.25 did materialize. The offer was made, and I would like to . . . But isn't it a contingent offer? He had some requirements, due diligence, et cetera. You could pull out from that offer. Excuse me, Your Honor. I would like to set the record straight here, and this was very misleading of my opposing counsel. There was an initial offer that did have contingencies. The offer . . . the subsequent offer that was made . . . It's in the record. Document 69-1 at 1, and also Exhibit 1 at 1 and 2, was the final offer by the Nuttings. It was a cash offer, no due diligence, no contingencies. The only term in the offer other than . . . Oh, and providing for protection of the S Corporation status, and the only term in the offer was the breakup fee. So the sole basis for rejecting the offer was the breakup fee, which, again, the receiver deemed by the district court to be highly qualified. That's a quote. It would come out of the government's hide anyway. Correct, Your Honor, and the government would still recover more than under Paxton's low offer. The government hadn't objected to it. Nobody objected. Nobody objected. Correct, Your Honor. Paxton did not object to the breakup fee. Again, also misleading is my opponent's statement . . . . . . only addressed the breakup fee. That was the sole basis in that opinion. Yes, Your Honor. My opponent's statement that the Nuttings offer was non-conforming is also somewhat misleading because the only way in which it did not conform with the court's requirements was the breakup fee, and that requirement had not been imposed until the offer was submitted. In other words, the original order, having the receiver solicit offers, did not say breakup fees aren't allowed, breakup fees are . . . It didn't address the breakup fee. Exactly. Exactly, Your Honor. The receiver's declaration submitted at the end of the case specifically said that the restrictions imposed by the court did chill the bidding process and that there were other parties interested in submitting, but they felt it was futile because the district court had demonstrated such marked favoritism toward Paxton and that no other offers would be . . . Or it could be they didn't want to pay the breakup fee. They wouldn't have to, Your Honor. The breakup fee would come out of the proceeds. The government was indifferent to payment of the breakup fee and it would not have to be added to any offer. The Nuttings didn't have to pay it. Paxton wouldn't have had to pay it. Would there have been any impact on the Paxton shareholders, the other Paxton shareholders who have an interest in the property? They don't have . . . the other Paxton shareholders do not have an interest in these units. They have an interest in their own units and in the company. So if the Nuttings offer would have been accepted, it would have had no impact whatsoever on independent third parties? Not under the Rogers requirements, which is what I believe you're referring to. Because the whole idea was to sell the units. Correct. Rogers deals with co-owners, holders of interest in the property that's being sold. The other owners don't have an interest in these units, just in the company as a whole. I think we have your case. Thank you, Your Honor. Take a break. Take a break. We'll take about a ten minute break.